UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARY BRADLEY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:18 CV 1753 ACL ) |
| ANDREW M. SAUL,[1] Commissioner of Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

## **MEMORANDUM**

Plaintiff Mary Bradley brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Bradley's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

---

[1]After this case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

# I. Procedural History

Bradley filed her application for benefits on February 16, 2016, claiming that she became unable to work on August 10, 2015. (Tr. 169, 29.) In her Disability Report, Bradley alleged disability due to fibromyalgia, spinal nerve pain, lower back pain, neck and shoulder pain, depression, anxiety, and Hashimoto's disease. (Tr. 196.) Bradley was 49 years of age on her alleged onset of disability date. (Tr. 37.) Her application was denied initially. (Tr. 93-100.) Bradley's claim was denied by an ALJ on March 5, 2018. (Tr. 29-39.) On August 20, 2018, the Appeals Council denied Bradley's claim for review. (Tr. 1-3.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Bradley argues that "the ALJ improperly weighed the treating physician's opinions." (Doc. 20 at p. 3.) She also contends that the ALJ "failed to properly evaluate Plaintiff's pain." *Id.* at p. 9.

## II. The ALJ's Determination

The ALJ first found that Bradley meets the insured status requirements of the Social Security Act through June 30, 2021. (Tr. 31.) Bradley had not engaged in substantial gainful activity since her alleged onset date. *Id.* The ALJ next found that Bradley had the following severe impairments: cervical radiculopathy status post cervical fusion, and lumbago. (Tr. 32.) The ALJ found that Bradley did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 34.)

As to Bradley's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she cannot climb ladders, ropes, or scaffolds and can only occasionally climb ramps and

> stairs. The claimant can engage in occasional balancing, stooping, crouching and crawling. She can engage in occasional overhead reaching, pushing, and pulling bilaterally, and is limited to frequent handling with the left non-dominant upper extremity.

*Id.* The ALJ found that Bradley was unable to perform past relevant work, but was capable of performing other jobs existing in significant numbers in the national economy, such as shipping weigher, marking clerk, and photocopy machine operator. (Tr. 37-38.)

The ALJ therefore concluded that Bradley was not under a disability, as defined in the Social Security Act, from August 10, 2015, through the date of the decision. (Tr. 38.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on February 16, 2016, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

(Tr. 39.)

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir.

2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported

an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."  42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."  *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do

basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks

omitted); *see* 20 C.F.R. § 416.945(a)(1).  The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. § 416.945(a)(3).  The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id*.  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience.  *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §416.920(a)(4)(v).  At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.  The first step requires the Commissioner to "record the pertinent signs, symptoms,

findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *Id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *Id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Bradley argues that the ALJ failed to properly weigh the medical opinion evidence. She also contends that the ALJ did not properly evaluate her subjective complaints of pain. The Court will address Bradley's claims in turn.

### 1. Medical Opinion Evidence

Bradley argues that the ALJ erred in evaluating the opinions of treating pain management specialist Ramis Gheith, M.D.; and nurse practitioner Constance Young, FNP.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty. 20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

Dr. Gheith provided opinions on two occasions, both of which were handwritten on prescription paper. On November 12, 2015, Dr. Gheith stated that Bradley should "remain on permanent restrictions for work including no lifting more than twenty pounds, no repetitive twisting, bending, lifting, or stooping." (Tr. 433.) He further expressed the opinion that

Bradley should not work more than eight hours a day.  *Id.*  On February 8, 2016, Dr. Gheith again stated that Bradley should remain on permanent restrictions of no lifting more than 20 pounds, with "no repetitive twisting, stooping or bending due to aggravation of her lower back pain and also due to dorsal column stimulator system being in place."  (Tr. 434.)

The ALJ indicated that she was assigning Dr. Gheith's opinions "significant weight insofar as to the specific limitations."  (Tr. 37.)  She explained that Dr. Gheith saw Bradley "consistently over a couple of years," and that the evidence "generally supports the proposition that the claimant was restricted to lifting no more than 20 pounds."  *Id.*  The ALJ stated that the RFC she determined was "not too different from Dr. Gheith's opinion, with the postural limitations in the residual functional capacity reflecting Dr. Gheith's assessments about no repetitive twisting, bending, lifting, and stooping."  *Id.*

Dr. Gheith, a pain management physician, saw Bradley approximately monthly from August 2014 through August 2016 for treatment of her neck and low back pain.  (Tr. 508-93, 633-58.)  Bradley argues that the ALJ erred in failing to include all of the limitations found by Dr. Gheith in Bradley's RFC.  Specifically, Bradley notes that the ALJ, without explanation, did not include restrictions regarding "repetitive lifting."

As previously noted, an ALJ is not required to adopt all the limitations of any medical opinion.  *See Martise*, 641 F.3d at 927 (ALJ does not need to adopt the entirety of a medical opinion).  The fact that the ALJ gave significant weight to Dr. Gheith's opinion does not mean that she adopted it in toto.  *See Castro v. Berryhill*, No. 4:17CV2037DDN, 2018 WL 3020207, at *7 (E.D. Mo. June 18, 2018) (citing *Fischer v. Colvin*, No. 2:14CV104ACL, 2016 WL 1170972, at *7 (E.D. Mo. Mar. 25, 2016) (although the ALJ assigned "great weight" to a medical opinion, the ALJ was not obligated to adopt every limitation contained therein)).

The ALJ did not err in weighing Dr. Gheith's opinion. She accorded significant weight to Dr. Gheith's opinions and specifically included Dr. Gheith's limitations regarding lifting no more than twenty pounds, and only occasional stooping. It is true the ALJ did not include a specific restriction regarding "repetitive lifting." The ALJ did, however, include additional limitations not indicated by Dr. Gheith such as: no climbing ladders, ropes, or scaffolds; only occasional climbing ramps and stairs; occasional balancing, crouching and crawling; occasional overhead reaching, pushing, and pulling bilaterally; and frequent handling with the left non-dominant upper extremity. (Tr. 34.) As will be discussed below, the ALJ's RFC determination is based on substantial evidence. The ALJ was not required to adopt each one of Dr. Gheith's limitations.

Bradley next argues that the ALJ erred in weighing the opinions of Ms. Young. Ms. Young is a nurse practitioner working under John Ninichuck, M.D. On November 22, 2017, Ms. Young completed a Physical Residual Functional Capacity Questionnaire, in which she indicated she had been seeing Bradley every three months since 2010 for panic attacks, Hashimoto's, thyroiditis, fibromyalgia, and mitral valve insufficiency. (Tr. 687.) She indicated Bradley had symptoms of pain in the neck and low back, right lower leg, numbness in the fingers of the left hand, anxiety, and panic attacks. *Id.* Ms. Young expressed the opinion that Bradley could rarely lift up to twenty pounds; walk one city block or less without rest; sit for 45 minutes at a time and sit a total of four hours; stand for ten minutes at a time and stand for a total of less than two hours; must get up and walk approximately every thirty minutes for one to five minutes; requires the ability to shift positions at will; needs to take unscheduled breaks during an eight-hour workday; should elevate her legs with prolonged sitting; could never look down; could rarely turn her head to the side or look up; could occasionally hold her head in a static position;

was limited in her ability to use her hands and arms, with the left side being more limited than the right; and would be absent from work three to four days per month as a result of her impairments. (Tr. 688-89.) Dr. Ninichuck also signed the form as Ms. Young's "supervising doctor." (Tr. 690.)

The ALJ assigned "partial weight" to Ms. Young's opinions. (Tr. 37.) The ALJ first noted that Dr. Ninichuck only signed the form but "did not independently specify work abilities or limitations." *Id.* She stated that it "appears the opinion depends mostly on the claimant's subjective complaints, which significantly exceed the objective signs found upon examination of the claimant." *Id.*

The ALJ summarized the objective medical evidence as follows: Bradley complained about upper and lower back pain prior to her August 2015 alleged onset of disability. (Tr. 35.) In March 2015, Bradley presented to Bassam A.R. Bhadi, M.D. at St. Anthony's Neurosurgery Specialists, with multiple pain complaints. (Tr. 333.) She reported that she had been experiencing back pain for years. (Tr. 35, 333.) Upon examination, Bradley had normal strength and sensation of all extremities, with symmetric reflexes. *Id.* In July 2015, Bradley saw orthopedist R. Peter Mirkin, M.D., with complaints of pain in her neck and down both arms. (Tr. 35, 363.) Upon examination, Bradley had limited range of motion in the neck and some left bicep weakness. *Id.* X-rays revealed some spondylitic disease, and an MRI demonstrated a disc bulge at C5-6 without compromise of the cord or foramen. (Tr. 35, 363, 365.) On August 13, 2015, Bradley underwent cervical decompression and fusion at C5-C6 performed by Dr. Mirkin. (Tr. 396.)

Bradley saw Dr. Gheith on a regular basis for complaints of lower back pain. Dr. Gheith noted that Bradley had been advised by two spinal surgeons that she was not a candidate for

lumbar spinal surgery. (Tr. 553.) On September 21, 2015, Bradley complained of worsening back pain for five years. (Tr. 546.) On examination, Dr. Gheith noted poor posture and weak lumbar paraspinal muscles with some atrophy, decreased range of motion of the lumbar spine on extension and flexion due to pain, and positive straight leg raise test; but Bradley ambulated without difficulty and had normal muscle strength bilaterally of the upper and lower extremities. (Tr. 35, 547.) Dr. Gheith started Bradley on a spinal cord stimulator trial. (Tr. 546-52.) Bradley reported 65 to 70 percent improvement of her pain and function on September 28, 2015. (Tr. 543.) She underwent placement of a permanent implant on October 16, 2015. (Tr. 540.) On October 22, 2015, Bradley reported improvement of her lumbar pain. (Tr. 537.) Bradley's straight leg raise test was negative; otherwise Dr. Gheith's findings on examination remained unchanged. *Id.* On November 11, 2015, Bradley reported her chronic pain was "much improved." (Tr. 534.) In December 2015, she indicated that her pain was fifty percent improved since the implant procedure. (Tr. 36, 530.)

Bradley saw Ms. Young on February 26, 2016, for her pain complaints. (Tr. 722-23.) Ms. Young noted some lumbar tenderness, but Bradley had a normal gait and station and her sensation was intact. (Tr. 36, 723.) On March 8, 2016, Bradley reported to Dr. Gheith for the first time "chronic intractable persistent and severe neck pain," which had been worsening since surgery. (Tr. 513.) On examination, Dr. Gheith noted some tenderness and decreased range of motion due to pain in the cervical spine; but Bradley had full strength and ambulated without difficulty. (Tr. 36, 514.) In April 2016, Ms. Young found Bradley had a normal gait and station, intact sensation, full muscle strength, and full range of motion of the extremities. (Tr. 36, 715.) In June 2016, Bradley reported to Dr. Gheith she had achieved 50 percent improvement in her neck pain. (Tr. 644.) On July 27, 2016, Bradley complained of lower back

pain after "pulling the stimulator" moving two sectional sofas. (Tr. 641.) Bradley underwent a left suprascapular nerve block for complaints of neck pain on August 9, 2016. (Tr. 638.) On March 27, 2017, Ms. Young noted some tenderness of the cervical and lumbar spine. (Tr. 36, 709.) In May 2017, Ms. Young noted some lumbar tenderness, but Bradley had full range of motion of the neck. (Tr. 36, 707.) Ms. Young found Bradley had some cervical and lumbar tenderness again in August 2017, but her sensory/motor and reflexes were intact. (Tr. 36, 703.) In November 2017, Ms. Young noted lumbar tenderness, with increased pain on straight leg raise test on the right. (Tr. 36, 700.)

The ALJ found that, although Bradley received consistent treatment for neck and back pain, examinations typically revealed only some tenderness and some limited range of motion of the cervical and lumbar spine. (Tr. 36.) She stated that the record does not contain findings of persistent muscle spasms, muscle weakness, or muscle atrophy; and her gait and station were consistently normal. *Id.* The ALJ concluded that the medical evidence was consistent with a limitation to light work. *Id.*

The ALJ did not err in evaluating Ms. Young's opinions. Ms. Young's opinions must be evaluated as information provided by an "other" medical source. *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007). "Other" sources are medical sources who are not "acceptable" medical sources and include nurse practitioners, physician assistants, licensed clinical workers, naturopaths, chiropractors, audiologists, and therapists. 20 C.F.R. § 404.1513(d)(1).[2] Opinions from "other" medical sources are important and should be evaluated on key issues such as

---

[2]Under current regulations, effective March 27, 2017, medical opinions from all medical sources are treated the same; "[a] medical opinion is a statement from a medical source about what you can still do despite your impairments." *See* 20 C.F.R. § 404.1513(a)(2) (effective Mar. 27, 2017). Because Bradley's claim was filed on February 22, 2016, the old regulations apply.

impairment severity and functional effects, along with other relevant evidence in the record. *Sloan*, 499 F.3d at 888-89. In general, when weighing the opinion of an "other" medical source, an ALJ should consider: the length of time and frequency of Plaintiff's visits with the source; the consistency of the source's opinion with other evidence; the evidence and explanations supporting the source's opinion; the source's specialty; and any other factors that tend to support or refute the opinion. *See* Social Security Ruling 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006); 20 C.F.R. § 404.1527. Information from these other sources cannot establish the existence of a medically determinable impairment but may provide evidence to show the severity of impairments and how they affect Plaintiff's ability to work. *Sloan*, 499 F.3d at 888. "[An] ALJ is permitted to discount such [other source] evidence if it is inconsistent with the evidence in the record." *Lawson v. Colvin*, 807 F.3d 962, 967 (8th Cir. 2015).

Here, the ALJ considered Ms. Young's opinions, but found they were inconsistent with the medical evidence of record. Specifically, Ms. Young and other providers routinely found Bradley had a normal gait and station, intact sensation, full muscle strength, and full range of motion of the extremities. The extreme limitations found by Ms. Young—such as an ability to sit for only 45 minutes at a time and sit a total of four hours, stand for ten minutes at a time and stand for a total of less than two hours, and must elevate her legs with prolonged sitting—are not supported by her own treatment notes or the other medical evidence of record.

Thus, the ALJ properly evaluated the medical opinion evidence.

### 2. Subjective Complaints and RFC

Bradley next argues that the ALJ failed to properly evaluate the credibility of her subjective complaints of pain.

When evaluating a claimant's subjective statements about symptoms, the ALJ must "give full consideration to all of the evidence presented relating to subjective complaints," including a claimant's work history and observations by third parties and physicians regarding: "(1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is under no obligation to specifically address each *Polaski* factor as long as the ALJ at least "acknowledges and considers the factors before discounting a claimant's subjective complaints." *Bryant v. Colvin*, 861 F.3d 779, 782-783 (8th Cir. 2017); *Swink v. Saul*, 931 F.3d 765, 770-771 (8th Cir. 2019) (accord). If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also* SSR 16-3p, at 2017 WL 5180304, at *11.

The record shows that the ALJ properly considered the *Polaski* factors. The ALJ summarized Bradley's testimony regarding her limitations as follows: Bradley alleged that she is unable to lift her left arm all the way up, she drops things because her two fingers remain numb, she cannot sit more than an hour without experiencing back and leg pain, she has to sit for an hour after standing for thirty minutes, she must elevate her leg, and she must sit and rest after doing anything for more than thirty minutes. (Tr. 35, 61-64.) She further indicated in her function report that she has difficulties performing most activities of daily living, including dressing and bathing. (Tr. 35, 61-62.)

The ALJ first discussed Bradley's earnings history, noting she earned as much as $28,000 in the past, which "lends some support to her allegations." (Tr. 35.)

The ALJ stated that Bradley reported she was moving furniture in November 2017, which is not consistent with her allegations of disabling pain. (Tr. 35, 682.)

The ALJ summarized the objective medical evidence, as discussed above, and found that it failed to fully support Bradley's allegations. (Tr. 35-36.) Examinations typically revealed Bradley had a normal gait and station, intact sensation, and full muscle strength.

In addition, Bradley reported significant improvement of her pain with medication and implantation of a spinal cord stimulator. "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (quoting *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)).

The Court finds that the ALJ considered Bradley's subjective complaints on the basis of the entire record and set out inconsistencies that detracted from her credibility. Because the ALJ's determination not to fully credit Bradley's subjective complaints is supported by "good reasons and substantial evidence," the Court defers to her determination. *See Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006).

The undersigned notes that, although the ALJ did not fully credit Bradley's subjective complaints, the ALJ accorded some credit to Bradley's complaints by incorporating significant functional limitations in her RFC.

A claimant's RFC is what she can do despite her limitations. *Dunahoo v. Apfel,* 241 F.3d 1033, 1039 (8th Cir. 2001). The claimant has the burden to establish her RFC. *Eichelberger,* 390 F.3d at 591. The ALJ determines a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. *Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005); *Eichelberger,* 390 F.3d at 591; 20 C.F.R. §

404.1545(a). The ALJ is "required to consider at least some supporting evidence from a [medical professional]" and should therefore obtain medical evidence that addresses the claimant's ability to function in the workplace. *Hutsell v. Massanari,* 259 F.3d 707, 712 (8th Cir. 2001) (internal quotation marks and citation omitted). An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand. *Id.*

The RFC determined by the ALJ is supported by substantial evidence on the record as a whole. It is supported by Dr. Gheith's opinions. In fact, the ALJ incorporated additional limitations not found by Dr. Gheith. It is also consistent with the treatment notes of Bradley's various providers revealing minimal findings on examination; and an improvement in Bradley's pain with treatment. This evidence supports the ALJ's determination that Bradley retains the ability to perform a range of light work.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

*s/Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of March, 2020.